**RICHARD R. BEST**
**REGIONAL DIRECTOR**
Lara Shalov Mehraban
Vanessa De Simone
Bennett Ellenbogen
Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0062 (Ellenbogen)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **COMPLAINT** |
| Plaintiff, | 21 Civ. \_\_\_\_\_ ( ) |
| -against- | |
| **PETER R. QUARTARARO,** | **JURY TRIAL DEMANDED** |
| Defendant, | |
| -and- | |
| **PRIVATE EQUITY SOLUTIONS, INC., LEONARD QUARTARARO, PAUL CASELLA, and LISA ECKERT,** | |
| Relief Defendants. | |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Defendant Peter R. Quartararo ("Quartararo") and Relief Defendants Private Equity Solutions, Inc.

("Private Equity Solutions"), Leonard Quartararo ("Leonard Quartararo"), Paul Casella ("Casella"),

and Lisa Eckert ("Eckert")  (together, "Relief Defendants"), alleges as follows:

## SUMMARY OF ALLEGATIONS

1. This matter involves a scheme by Quartararo to defraud investors by claiming that he could sell them shares in well-known privately-held companies, which were expected to increase in value when those companies completed their initial public offerings ("IPOs"). These representations were false.

2. In the summer of 2019, Quartararo began soliciting an acquaintance and others to invest through him in "pre-IPO" shares of several "unicorn" companies, including Peloton Interactive, Inc. ("Peloton") and Airbnb, Inc. ("Airbnb"). Over the next several months, Quartararo convinced at least four individuals to invest at least approximately $436,000 in the purported pre-IPO shares.

3. In truth, Quartararo – a former securities broker who had been previously barred by the Financial Industry Regulatory Authority ("FINRA") from working at any registered securities brokerage firm – never purchased or held pre-IPO shares in these companies on behalf of the investors. Instead, Quartararo stole the funds and used them for his personal benefit.

4. Quartararo instructed the investors to make out their checks to Leonard Quartararo, Quartararo's father, or to Private Equity Solutions, a private company owned by Casella. Casella, who formerly worked in the securities industry, was barred by FINRA from associating with any registered securities brokerage firm in 2008, and was convicted of federal racketeering charges in 2011.

5. Leonard Quartararo and Private Equity Solutions, in turn, made numerous payments that benefitted Quartararo, Quartararo's girlfriend, Eckert, and other family members, including payments on a Maserati for Quartararo and Eckert.

## VIOLATIONS

6. By virtue of the foregoing conduct and as alleged further herein, Defendant Quartararo has violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]; Section 10(b) of the Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

7. Unless Quartararo is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8. The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)], and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

9. The Commission seeks a final judgment: (a) permanently enjoining Quartararo from violating the federal securities laws and rules this Complaint alleges he has violated; (b) ordering Quartararo to disgorge all ill-gotten gains he received as a result of the violations alleged here and to pay prejudgment interest thereon pursuant to Exchange Act Section 21(d)(5) [15 U.S.C. § 78u(d)(5)] and Sections 6501(a)(1) and (a)(3) of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, to be codified at 15 U.S.C. §§ 78u(d)(3) and 78u(d)(7); (c) ordering Quartararo to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; (d) ordering each of the Relief Defendants to pay, with prejudgment interest, all ill-gotten gains by which they were unjustly enriched, under Exchange Act Section 21(d)(5) [15 U.S.C. § 78u(d)(5)]; and (d) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)], and Exchange Act Section 27 [15 U.S.C. § 78aa].

11. Quartararo, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

12. Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)], and Exchange Act Section 27 [15 U.S.C. § 78aa]. Quartararo resides in the Eastern District of New York, and certain of the acts, transactions, practices and courses of business alleged herein took place in the Eastern District of New York. Quartararo solicited investments from investors who reside in the Eastern District of New York. Eckert and Casella's residences, and Private Equity Solutions' principal place of business, are in the Eastern District of New York.

## DEFENDANT

13. **Quartararo**, age 56, resides in Glen Cove, New York. From April 2000 until September 2011, Quartararo worked as a registered representative for various brokerage firms. In 2013, FINRA found that Quartararo willfully violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, along with several FINRA rules, when he solicited acquaintances with a penny stock tip, but failed to invest the funds and provided false documents to the investors. That year, Quartararo was permanently barred by FINRA from association with any FINRA-registered brokerage firm.

## RELIEF DEFENDANTS

14. **Private Equity Solutions** is a New York corporation located in Jericho, New York and purports to offer debt restructuring services. Private Equity Solutions was established by Casella in approximately September 2017.

4

15.     **Leonard Quartararo**, age 78, is Quartararo's father and resides in Staten Island, New York.

16.     **Casella**, age 54, resides in Woodbury, New York and is the owner of Private Equity Solutions.  In 2011, he was convicted on federal racketeering charges in connection with the trafficking of women from Eastern Europe to work as exotic dancers.  In 2008, Casella was barred by FINRA from associating with any FINRA-registered brokerage firm after failing to pay sanctions imposed by FINRA in connection with a customer complaint.  Casella and Quartararo previously worked together at Milestone Group Management LLC, a Lake Success, New York brokerage firm.

17.     **Eckert** (formerly, Lisa Brownstein), age 45, is Quartararo's girlfriend and resides in Glen Cove, New York.

## FACTS

### I.   QUARTARARO SOLICITED SHAM INVESTMENTS IN "PRE-IPO" SHARES OF WELL KNOWN PRIVATE COMPANIES

18.     In approximately July 2019, Quartararo commenced his scheme to defraud investors when he approached an acquaintance, Investor A, with an alleged investment opportunity.

19.     Quartararo told Investor A that he had previously acquired shares in the then-private companies Airbnb and WeWork (formally known as The We Company, Inc.) ("WeWork"), both of which were widely expected to be taken public through IPOs.  (In fact, Quatararo had never obtained shares of those prominent private companies.)  Quartararo claimed that, to show his appreciation for a favor that Investor A had done for Quartararo, Quartararo would sell some of the pre-IPO shares to Investor A for $2 per share.  Quartararo further claimed that, once the companies went public, he would sell the shares and Investor A could keep all of the profits, less any capital gains taxes.

20.     Based on these representations, Investor A agreed to purchase the pre-IPO shares and, on approximately August 5, 2019, gave Quartararo an initial payment of $96,000.  At

5

Quartararo's direction, Investor A wrote the check out to Private Equity Solutions, with the notation "Stock Purchase IPO."

21. In late August 2019, Quartararo told Investor A that he had access to pre-IPO shares in a third company, Peloton, at prices between $1.80 and $2 per share. Based on Quartararo's representations, Investor A agreed to purchase the shares, and gave Quartararo a second check for $71,000 on approximately August 29, 2019. In this case, Quartararo instructed Investor A to make the check out to Leonard Quartararo. In the memo section of the check, Investor A wrote "Stock Purchase."

22. Several weeks later, in September 2019, Quartararo solicited a third investment of $35,000 from Investor A, ostensibly for additional Peloton pre-IPO shares. In the memo section of the check, Investor A wrote "Stock Purchase." Once again, Quartararo instructed Investor A to make the check out to Leonard Quartararo.

23. Investor A introduced several other acquaintances to Quartararo. First, Investor A told his girlfriend, Investor B, about the opportunity, and Investor B invested $72,000 with Quartararo in early September 2019. At Quartararo's request, Investor B made the check out to Private Equity Solutions.

24. Second, Investor A introduced Quartararo to his friends, Investor C and Investor D, who are brothers. In approximately August or September 2019, Investors C and D met Quartararo at a Starbucks in Jericho, New York and Quartararo repeated his claims about the pre-IPO shares. Specifically, Quartararo claimed that he could sell Investors C and D pre-IPO shares in Airbnb, Peloton and WeWork; that he would liquidate the shares once the companies completed their IPOs; and that, after completing the necessary tax paperwork, he would pay out the profits and principal to Investors C and D in approximately five to six months.

25. Based on Quartararo's representations, Investors C and D invested in the purported pre-IPO shares. Investor C and Investor D each provided a check to Quartararo in the amount of $81,000 on approximately September 29, 2019. Once again, Quartararo instructed Investors C and D to make these checks out to Leonard Quartararo. Quartararo initially claimed that "Leonard" was his legal name, but, when pressed by Investors C and D, admitted that Leonard was his father, whom he said was involved in the investments.

26. In the memo line of his check, Investor C wrote the names of the companies in which Investor C believed he was investing, and the amount of funds allocated to each company: "43,500 Airbnb, 18,000 WeWorks [sic], 19,500 Pelaton [sic]". Investor D wrote the same information on his check.

27. Quartararo hand wrote and signed a "bill of sale" to Investors C and D, which indicated the amount of shares they allegedly purchased and the amount of money they paid him:

```
9/16/19 →
           [Investors C and D]  purchased from P. Quartara

1) 87,000 → AIR BNB → @ 2.00 a share

2) 36,100 → WE WORK @ 1.75 a share

3) 39,000 → PeLoton @ 2.00 a share
   _____
   162,000 —

9/20/19.
[signature]
```

## II. QUARTARARO'S CLAIMS ABOUT THE INVESTMENTS WERE FALSE: THE INVESTOR FUNDS WERE MISAPPROPRIATED FOR QUARTARARO'S BENEFIT

28. As Quartararo knew, or recklessly disregarded, his claims about the purported pre-IPO investments were false. Quartararo had no access to pre-IPO shares in these prominent private companies and had never obtained such shares in prominent private companies prior to their IPOs. Quartararo had no reasonable basis to tell investors he owned or could obtain such pre-IPO shares. Quartararo did not use the investors' funds to purchase pre-IPO shares of Airbnb, Peloton or WeWork, nor did Quartararo ever hold any pre-IPO shares in these companies. Instead, Quartararo misappropriated the investor funds for his benefit and the benefit of Relief Defendants, among others.

### A. Transfers from Private Equity Solutions to the Relief Defendants

29. As described above, the four investors gave Quartararo six personal checks for a total of $436,000.00. Two of the checks, totaling $168,000, were made out to and deposited into a Private Equity Solutions checking account, for which Casella is the only authorized signatory.

30. After the investor checks were deposited in the Private Equity Solutions account, a significant amount of funds were transferred from that account to accounts connected to Quartararo and the Relief Defendants.

31. For example, between approximately November 2019 and April 2020, $14,500 was transferred from the Private Equity Solutions account to Eckert, Quartararo's girlfriend.

32. Additionally, between approximately December 2019 and September 2020, approximately $28,300 was transferred from the Private Equity Solutions account to Casella's personal bank account. In turn, between approximately May 2020 and July 2020, Casella's personal bank account transferred approximately $28,000 to Eckert.

33. Leonard Quartararo also received funds from the Private Equity Solutions account. A check from the Private Equity Solutions account dated November 22, 2019 for $12,500 was made out to Leonard Quartararo and cleared December 16, 2019.

34. Other funds from the Private Equity Solutions account were used to pay for personal items for Quartararo and Eckert. For example, on approximately October 30, 2019, Private Equity Solutions paid $8,500 to a Long Island, New York car dealership for a down payment on a Maserati. Registration documents for the vehicle show that it is registered to Eckert and owned by Quartararo.

**B.  Withdrawals from the Leonard Quartararo Account**

35. Four of the investors' checks, totaling $268,000, were made out and deposited into an account held by Leonard Quartararo.

36. After the investors' checks were deposited in Leonard Quartararo's account, the majority of those funds were withdrawn from the account in cash. In total, at least $156,000 in cash was withdrawn from the Leonard Quartararo account between the date of the first investor deposit and January 27, 2021.

37. Many of these cash withdrawals were made almost immediately after the investors' funds were deposited. For example, on August 30, 2019, Investor A's $71,000 was deposited into Leonard Quartararo's account at 11:53 a.m., and $7,600 in cash was withdrawn from the account two minutes later.

38. As another example, on October 4, 2019, Investor D's $81,000 check was deposited into Leonard Quartararo's account at 12:07 p.m., and $9,000 in cash was withdrawn four minutes later.

39. None of Private Equity Solutions, Leonard Quartararo, Casella or Eckert had any legitimate claim to the investor funds that they received.

### III. QUARTARARO CONCEALED HIS FRAUD

40. Peloton completed its IPO in September 2019, and Airbnb completed its IPO in December 2020. WeWork announced that it was cancelling its planned IPO in September 2019. Despite his prior promises to the investors, Quartararo did not return any investment funds to the investors after the Peloton or Airbnb IPOs.

41. Instead, Quartararo, knowingly, or with reckless disregard, concealed and perpetuated his fraud by periodically promising the investors that he would sell the shares in the investments and give them their profits.

42. For example, in approximately June 2020, Quartararo knowingly, or with reckless disregard, falsely informed Investor A that he had 56 total investors in different pre-IPO investments, and further falsely promised Investor A that he had his "finger on the trigger" and was "close" to selling the shares.

43. Similarly, in December 2020, Investors C and D spoke with Quartararo and demanded that Quartararo sell their shares. Quartararo then knowingly, or with reckless disregard, falsely promised that he would "sell at the beginning of the year and you'll get your money."

44. Quartararo routinely knowingly, or with reckless disregard, failed to provide the investors with any evidence of any investment, refusing to show account statements or other proof of the purported pre-IPO shares when asked by investors to do so.

45. Quartararo has continued to intentionally or with reckless disregard deceive his investors regarding the true disposition of the funds they entrusted to him. To date, Quartararo has not returned any of the investment funds to the investors, nor has he transferred any securities or other assets to the investors.

**FIRST CLAIM FOR RELIEF**
**Violations of Securities Act Section 17(a)**
**(Quartararo)**

46. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 5 and 13 through 45.

47. Quartararo, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly has employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently has obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently has engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

48. By reason of the foregoing, Quartararo, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

**SECOND CLAIM FOR RELIEF**
**Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**
**(Quartararo)**

49. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 5 and 13 through 45.

50. Quartararo, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the

11

statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

51. By reason of the foregoing, Quartararo, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF
### Unjust Enrichment
### (Relief Defendants)

52. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 5 and 13 through 45.

53. Investor funds were either directly paid to Relief Defendants or wrongly diverted to Relief Defendants.

54. Private Equity Solutions and Leonard Quartararo directly obtained funds as alleged above through investor checks made out to them, as part, and in furtherance, of the securities violations alleged in paragraphs 13-45, and under circumstances in which it is not just, equitable or conscionable for Private Equity Solutions and Leonard Quartararo to retain the funds. As a result of the foregoing, relief defendants Private Equity Solutions and Leonard Quartararo were unjustly enriched.

55. In addition, Leonard Quartararo, Casella and Eckert obtained funds diverted to them as alleged above as part, and in furtherance, of the securities violations alleged in paragraphs 13-45, and under circumstances in which it is not just, equitable or conscionable for Casella or Eckert to retain the funds. As a result of the foregoing, relief defendants Leonard Quartararo, Casella and Eckert were unjustly enriched.

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

**I.**

Permanently enjoining Quartararo and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**II.**

Ordering Quartararo to disgorge all ill-gotten gains he received, directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations;

**III.**

Ordering Quartararo to pay civil monetary penalties under Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

**IV.**

Ordering Relief Defendants to disgorge all investor funds unlawfully received by them by which they were unjustly enriched, and to pay prejudgment interest thereon.

## VIII.

Granting any other and further relief this Court may deem just and proper.

Dated: New York, New York
April 27, 2021

*Richard R. Best*

RICHARD R. BEST
REGIONAL DIRECTOR
Lara Shalov Mehraban
Vanessa De Simone
Bennett Ellenbogen
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0062 (Ellenbogen)
EllenbogenB@sec.gov